IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANTHONY MICHAEL ROSE, JC-3055,  )
    Petitioner,  )
                                                                     )
        v.  )  2:12-cv-20
                                                      )
DAVID VARANO, et al.,  )
    Respondents.  )

MEMORANDUM and OPINION

Mitchell, M.J.:

      Anthony Michael Rose has presented a petition for a writ of habeas corpus which he has been granted leave to prosecute in forma pauperis.[1] For the reasons set forth below the petition will be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

      Petitioner is presently serving a 140 to 280 month sentence imposed following his conviction, by a jury, of burglar and robbery at Nos. CP-02-17880-2008 in the Court of Common Pleas of Allegheny County, Pennsylvania. This sentence was imposed on June 24, 2009.[2] An appeal to the Superior Court was filed in which the issues presented were:

    I.     Should the trial court suppress a prejudicial and unduly suggestive photographic array, when the witnesses are visible to each other when selecting the photographs and the defendant's photograph significantly differs from the other photographs in the array?

    II.    Is a defendant entitled to an unanimous jury verdict under Article III, §2 of the Sixth Amendment of the United States Constitution and Article I, §6 of the Pennsylvania Constitution?

    III.   Are an appellant's due process rights violated under the Fifth Amendment of the United States Constitution and Article 1, §9 of the Pennsylvania Constitution and does the trial court abuse its discretion when the trial court schedules a hearing to question a juror regarding his verdict months

---

[1] The petition was originally filed in the Middle District of Pennsylvania on December 21, 2011 and transferred to this Court. Subsequently the matter was stayed while the petitioner pursued his state court remedies and on December 4, 2013 the stay was lifted.
[2] See: Exhibit 6 to the answer of the Commonwealth.

1

after the jury was polled and then limits the relevant questions that can be asked of the juror?

On February 4, 2011, the judgment of sentence was affirmed.[3] A petition for allowance of appeal to the Pennsylvania Supreme Court was filed in which the question presented for review was:

> I. Does due process attach at a Pa.R.A.P. Rule 1926 hearing to correct the record and does the manner in which a Pa.R.A.P., Rule 1926 hearing is conducted violate due process when the trial court 1) calls a juror in to testify; 2) refuses to allow the defendant to call relevant witnesses; or 3) refuses to allow the defendant to question witnesses the trial court decides to call during the hearing?[4]

On July 12, 2011, leave to appeal was denied.[5]

On December 20, 2011, Rose filed a PCRA petition,[6] and on July 12, 2012, post-conviction relief was denied.[7] An appeal was filed in the Superior Court in which the questions presented were:

> I. Did the Court err or abuse its discretion when it dismissed Appellant's Petition without an evidentiary hearing on Appellant's claim that trial counsel was ineffective for failing to object to the Commonwealth's mischaracterization of a non-existent assault charge amounting to prosecutorial misconduct, said claim not being patently frivolous, is supported by evidence of record, and where a genuine issue of material fact existed which, if proven, would entitle Appellant to relief?
>
> II. Did the Court err or abuse its discretion when it dismissed Appellant's Petition without an evidentiary hearing on Appellant's claim that trial counsel was ineffective for failing to move to exclude or object [to] the use of other crimes, wrongs or acts evidence, specifically the mention of the August 28, 2008 date used at trial and the use of the Supplemental Police Report by Pittsburgh Police Officer Evans where the Commonwealth failed to meet its notice requirement under Pa.R.E. 404(b) regarding this alleged incident, a claim that was not patently frivolous, is supported by evidence of record, and where a genuine issue of material fact existed which, if proven, would entitle Appellant to relief?
>
> III. Did the Court err or abuse its discretion when it dismissed Appellant's Petition without an evidentiary hearing on Appellant's claim that trial counsel was ineffective for failing to move to suppress the Search Warrant

---

[3] See: Exhibit 20 to the answer of the Commonwealth.
[4] See: Exhibit 21 to the answer of the Commonwealth.
[5] See: Exhibit 23 to the answer of the Commonwealth.
[6] See: Exhibit 24 to the answer of the Commonwealth.
[7] See: Exhibit 29 to the answer of the Commonwealth.

issued for the search of 1458 Franklin Avenue, Pittsburgh, PA 15221 conducted on October 29, 2008 based on the staleness of the information contained in the affidavit, a claim that was not patently frivolous, is supported by evidence of record, and where a genuine issue of material fact existed which, if proven, would entitle Appellant to relief?

IV. Did the Court err or abuse its discretion when it dismissed Appellant's Petition without an evidentiary hearing where Appellant's claim that trial counsel was ineffective for failing to ensure Appellant's Constitutionally guaranteed right to be present at the suppression hearing conducted prior to trial, a claim that was not patently frivolous, is supported by evidence of record, and where a genuine issue of material fact existed which, if proven, would entitle Appellant to relief?

V. Did the Court err or abuse its discretion in dismissing the matter without holding an evidentiary hearing when the claims raised were not patently frivolous, were supported by evidence in the record and where genuine issues of material fact existed which, if proven, would entitle Appellant to relief?[8]

On July 15, 2013, the denial of post-conviction relief was affirmed.[9] A petition for allowance of appeal to the Pennsylvania Supreme Court was filed in which essentially these same questions were presented.[10] On November 19, 2013, leave to appeal was denied.[11]

In his petition here which appears to be disconnected and difficult to comprehend, Rose appears to allege he is entitled to relief on the following grounds:

I. The verdict was not unanimous, the stenographer's transcript was recorded such that Juror # 12 said "no" when asked if he agreed with the verdict; and thereafter the trial court, months later, held a hearing to question Juror # 12 to "correct" the record – violated petitioner's right to due process of law under the 14th Amendment when it refused to allow the stenographer to testify at this hearing, nor allow petitioner to question this juror.

II. The identification photo array, and the procedure, were unduly suggestive violative of due process; the affiant included false statements in the affidavit of probable cause and search warrant regarding identification, necessitating the need for a "Franks" hearing; particularly in light of the fact he was denied his right to be present at his suppression hearing; and petitioner was denied his right to a fair trial thereby. U.S.C.A. Const. Amend 6;14

---

[8] See: Exhibit 33 to the answer of the Commonwealth.
[9] See: Exhibit 36 to the answer of the Commonwealth.
[10] See: Exhibit 37 to the answer of the Commonwealth.
[11] See: Exhibit 39 to the answer of the Commonwealth.

3

III. Prosecutorial misconduct, "Brady" discovery violations, et al.; a prosecution deliberately undertaken to deprive this petitioner a fair trial. U.S.C.A. Const. Amend 5, 6, 14.

IV. Miss Goldston's testimony was contradictory in conflict with the laws of human experience, insufficient to maintain petitioner's conviction; U.S.C.A. Const. Amend 14;5.

V. Petitioner brings highly relevant claim that this is a case of mistaken identification; at minimum.

VI. Structural denial of counsel per se; and as reason for procedural default and failure to completely exhaust grounds two thru five.[12]

The factual background to this prosecution is set forth in the February 4, 2011 Memorandum of the Superior Court citing the trial court's opinion:

> On August 25, 2008, at approximately 5:15 a.m., Doris Goldston, who runs a daycare out of her home, answered the bell at the back door of her home. She testified that … [Rose] identified himself as a police officer. He wore a shirt with the word "security" written on the chest and he was wearing a badge. Several of these shirts with "security" imprinted upon them were subsequently recovered from [Rose's] residence. A silver gun clip was also recovered from [Rose's] place of residence. Ms. Goldston was suspicious and asked him his name and where his partner was. At that point, [Rose] ran out the back door from which he had entered.
>
> On August 28, 2008, [Rose] again went to the home of Ms. Goldston. He was in the same attire and asked her to let him in. She denied him entry, and [Rose] left when Ms. Goldston threatened to call the police.
>
> [Rose] a third time went to Ms. Goldston's residence, this time on October 8, 2008. He wore the same black shirt with "security" across it and a badge in the right corner of the shirt. [Rose] forced his way into the house, pointed a gun at Ms. Goldston, and said "somebody is dying today." He asked here "where's the money?" He dragged her around and held a gun to her neck for approximately fifteen minutes. She was eventually able to activate the security alarm, causing him to throw her to the floor and run out of the building.
>
> Wallace Goldstone, Ms. Goldston's fourteen-year-old grandson who resides with her, also testified that [Rose] was in Ms. Goldston's home on October []8, 2008. He testified that [Rose] pointed a silver gun in his directions and said "Don't look at me." He also said [Rose] was wearing a shirt with the word "security" on it

---

[12] See: Petition.

with a badge on the shirt. Mr. Goldston said he was scared and he feared for both his grandmother and for himself.[13]

Since, petitioner was denied direct review of his conviction by the Pennsylvania Supreme Court on July12, 2011 and he filed in instant petition in the Middle District of Pennsylvania on December 21, 2011, it is timely filed. 28 U.S.C. §2244(d).

It is provided in 28 U.S.C. §2254(b) that:

> An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411 U.S. 475 (1973); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez, supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir. 1995).

If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental miscarriage of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d Cir. 1995).

In construing § 2254(d)(1), the Court in Williams v. Taylor, 529 U.S. 362, 412-413 (2000) stated:

---

[13] See; Exhibit 20 to the answer of the Commonwealth at pp. 1-2.

Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.
We must thus decide whether the state supreme court's "adjudication of the claim ... resulted in a decision that was *contrary to*, or involved *an unreasonable application* of, clearly established Federal law, as determined by the Supreme Court of the United States...

A state court adjudication is "contrary to" Supreme Court precedent if it results from the application of "a rule that contradicts the governing law set forth" by the Supreme Court or is inconsistent with Supreme Court decision in a case involving "materially indistinguishable" facts ... "A state court decision fails the 'unreasonable application' prong only 'if the court identifies the correct governing rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case or if the state court either unreasonably extends a legal principle from the Supreme court's precedent to a new context where it should not apply or unreasonably refuses to extend the principle to a new context where it should apply...(citations omitted).

That is, the state court determination must be objectively unreasonable. Renico v. Lett, 130 S.Ct. 1855 (2010).

Petitioner's first issue is that the jury's verdict was not unanimous in that when polled, juror number 12 replied negatively when asked if he concurred in the verdict. (TT. 4/3/09 p.289). This issue has been raised in petitioner's state appeals and is therefore appropriately before this Court.

In her December 8, 2009 opinion, the trial court wrote:

Defendant raised an issue regarding the unanimity of the verdict in his Statement of Errors Complained of on Appeal. After receiving a copy of the transcript, Defendant, for the first time, alleged that Juror #12 did not agree with the verdict, and cited to the trial transcript in support. Because the transcript as produced was not in accord with this Court's recollection, or with the subsequent action taken by the Court after the jury was polled, this Court, pursuant to Rule 1926 of the

6

Pennsylvania Rules of Appellant Procedure, scheduled a hearing for September 4, 2009.

Defense counsel filed a Motion in Opposition and a Supplemental Motion in Opposition to the December 4, 2009 hearing, both of which were denied. Juror #12 appeared on December 4 and testified that he agreed with the verdict at the time that he was polled, and any recording of what he said to the contrary would be in error. Based on that testimony, this Court ordered the transcript to reflect that Juror #12 did in fact agree with the verdict.[14]

Based on the facts that the verdict was accepted by the trial court and recorded as such; there were no objections to the verdict placed on the record at the time it was rendered; the trial court recalled that the conviction was based on a unanimous verdict; the testimony from juror 12 that he had voted for conviction, and that the "error" was not discovered until after the transcript was prepared, it is clear that the "error" arose in the transcription of the record and not as a result of one juror disagreeing with the verdict i.e., the jury was unanimous in rendering its verdict.[15] This factual conclusion by the state court is entitled to a presumption of correctness here. 28 U.S.C. 2254(e)(1).

Additionally we note that F.R.Evid. 606 specifically authorizes a juror to testify that a mistake was made in recording a verdict ("during an inquiry into the validity of a verdict … a juror may testify about whether … a mistake was made in entering the verdict on the verdict form"). See: United States v. Lawson, 677 F.3d 629, 646 n.23 (4th Cir.), cert. denied 133 S.Ct. 393 (2012).

Whether or not such an inquiry was properly permitted under state law is of no concern here since we only address matter of federal constitutional magnitude and as such the conclusion is inescapable that no violation occurred.

Petitioner's next challenge is to the photo array as being unduly suggestive; that the search warrant was secured based on false statements of the affiant necessitating a Franks v. Delaware, 438 U.S. 154 (1978) hearing; that he was not present at the suppression hearing and that as a result he was denied a fair trial. In his state court appeals, Rose raised the issue of the suggestiveness of the photo array and his absence at the suppression hearing, but did not raise the issue of false statements employed to secure a search warrant or his lack of presence at the

---

[14] See: Exhibit 16 to the answer of the Commonwealth at pp.1-2.
[15] See: Exhibit 20 to the answer of the Commonwealth at p. 11.

suppression hearing other than in the context of ineffective assistance of counsel. Because these substantive claims were never raised in the state courts and petitioner can no longer seeks their review in the state courts a procedural default has occurred. Coleman v. Thompson, 501 U.S. 722,750 (1991). No showing having been made that a fundamental miscarriage of justice occurred, no further consideration of these matter is warranted here. [16]

In this claim, petitioner also contends that the photo array was unduly suggestive. At the suppression hearing held immediately prior to trial, Pittsburgh Detective Stacey Hawthorne-Bey testified that while investigating the subject robberies, petitioner was developed as a suspect as a result of the description provided by the victim and a witness; that the description was entered into the JNET computer systems and a series of similar photographs was computer generated; that this photo array was exhibited to the victim and the witness and that both witnesses identified Rose as the perpetrator (TT. 4/1-3/2009 pp.6-16). This led the trial court as well as the Superior Court to conclude that there was nothing unduly suggestive in the photo array.[17]

In Perry v. New Hampshire, 132 S.Ct. 716, 720 (2012) the Court summarized its case law as holding,

> An identification infected by improper police influence … is not automatically excluded. Instead, the trial judge must screen the evidence for reliability pretrial. If there is "a very substantial likelihood of irreparable misidentification" … the judge must disallow presentation of the evidence at trial. But if the indicia of reliability are strong enough to outweigh the corrupting effect of the police-arranged suggestive circumstances, the identification evidence ordinarily will be admitted, and the jury will ultimately determine its worth.

The state courts acted in conformity with this mandate and concluded that there was nothing unduly suggestive in the photo array. For this reason, the state court acted in conformity with federal law and this claim does not provide a basis for relief.

The petitioner next argues that he is entitle to relief as a result of Brady v. Maryland, 373 U.S. 83,87 (1963) violations (" we now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment"), as well as allegations of prosecutorial misconduct.

---

[16] It is worth noting that in addressing this issue the trial court observed that there is nothing in the record which demonstrates that the petitioner was not present at the suppression hearing, and that if he had not been present the court would have clearly noted this on the record. (Exhibit 32 to the answer of the Commonwealth at p. 7-8). We observe that the hearing record does not set forth that petitioner was present or absent thus, there are only the petitioner's unsupported assertions that he was not present.
[17] See: Exhibit 20 to the answer of the Commonwealth at p. 7.

8

Specifically, in this regard, he argues at page 24 of the petition that <u>Brady</u> violations occurred when the prosecution withheld (1) notice that Wallace Goldston was going to testify at trial; (2) Notice of the 8/28/08 date; (3) documentation detailing the finding upon search warrant of his mother's home [of] (i) silver gun clip; (ii) probation papers; (iii) several "security" t-shirts; (4) report ccr#201447; (5) copy of photo array. These claims were never raised in the state appellate courts of Pennsylvania and for this reason are procedurally defaulted here. <u>Coleman supra.</u>

Petitioner also contends that prosecutorial miscount occurred during his trial. Of the several issues which he raises, at best two have been presented to the Pennsylvania courts for their consideration in the first instance. Those are whether the prosecutor improperly introduced evidence regarding a non-existent assault charge and prior bad acts.

Petitioner's prior record was introduced during his mother's direct testimony as an alibi witness when she related that petitioner had violated his probation on federal counterfitting charges by being charged with fighting (TT. 4/1-3/09 p.177). Prosecutorial misconduct occurs when the prosecutor's actions so infects the trial as to amount to a due process violation. <u>Parker v. Matthews</u>, 132 S.Ct. 2148 (2012). In the instant case, it appears that the testimony was elicited from a defense witness by defense counsel and that even if this was not the case, the evidence against Rose was so strong that at best this was harmless.

Petitioner also alleges that the prosecutor improperly introduced evidence of prior bad acts. Specifically in this regard he challenges the testimony of Detective Stacey Hawthorne-Bey who testified that after the victims had identified the petitioner as their assailant, she obtained a search warrant for his home and recovered certain items linked to the robberies as well documents addressed to petitioner including information from the United States Probation Office (TT. 4/1-3/09 pp. 149-154). It is this latter revelation which petitioner now claims constitutes improper evidence of prior bad acts.

In reviewing this claim, the trial court wrote,

> This testimony was not elicited so that the jury could infer that Appellant had criminal propensities toward robbery, but was a relevant part of a greater narrative necessary for the jury to understand the context of the crimes committed and the basis for the eyewitness identification.[18]

---

[18] See: Exhibit 32 to the answer of the Commonwealth at p.7.

The admissibility of evidence in state courts is a matter of state law, Smith v. Phillips, 455 U.S. 209, 221 (1982)("federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension") unless a due process violation occurs. 28 U.S.C. 2254(a), Keller v. Larkins, 251 F.3d 408 (3d Cir.), cert. denied 534 U.S. 973 (2001).No such showing is made here.

Rose next alleges that he is entitled to relief as a result of the victim's testimony being in conflict "with the laws of human experience" and being insufficient to sustain his conviction. These claims were not raised in the state appellate courts and are for this reason procedurally defaulted here. Coleman, supra. Nevertheless, we note that if petitioner is seeking to challenge the credibility of the victim's testimony such an issue lies with the fact finder. United States v. John-Baptiste, 2014 WL 627685 (3d Cir.2014). Clearly the jury found the victims credible and there is no basis for disturbing its fact-finding. 28 U.S.C. § 2254(e)(1).

Petitioner also appears to contend that the evidence was insufficient to sustain his conviction. While not raised in the state appellate court, we observe that in order to demonstrate that the evidence was insufficient to sustain a conviction, a petitioner must demonstrate that based on the evidence presented no rational fact finder could have determined guilt beyond a reasonable doubt. Coleman v. Johnson, 132 S.Ct. 2060 (2012). Based on the factual recitation above there is no basis for such a claim.

Rose's fifth claim is that his conviction is based on mistaken identity. This claim likewise has never been presented to the Pennsylvania appellate courts and is procedurally defaulted here. Coleman, supra.

Finally, in his sixth claim, the petitioner appears to be alleging that for various reasons counsel was ineffective. Specifically, he contends "structural denial of counsel per se; and as reasons for procedural default and failure to completely exhaust grounds two thru five." In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to the effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000). Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors

were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong. See Strickland, 466 U.S. at 687; Rainey v. Varner, 603 F.3d 189,197 (3d Cir.2010) cert. denied 131 S.Ct. 1673 (2011). As a result, if a petitioner fails on either prong, he loses. Rolan v. Vaughn, 445 F.3d 671 (3d Cir.2006).

> As summarized by the post-conviction court and adopted by the Superior Court:
>
> Appellant asserts that trial counsel was ineffective for failing to object to the Commonwealth's mischaracterization of a non-existent assault charge. Second, Appellant asserts that trial counsel was ineffective for failing to move to exclude or object to the use of other crimes, wrongs or acts evidence. Appellant next asserts that trial counsel was ineffective for failing to move to suppress the search warrant based on the staleness of the information on which it was based. Appellant further asserts that trial counsel was ineffective for failing to ensure Appellant's presence at his suppression hearing…[19]

As discussed above, the substantive allegations which Rose seeks to raise here are meritless, and counsel cannot be deemed to have been ineffective for failing to raise meritless claims. Real v. Shannon, 600 F.3d 302 (3d Cir.2010). Additionally, federal courts must be extremely deferential to a state courts determination of ineffective counsel claims. Burt v. Titlow, 134 S.Ct. 10 (2013). In the instant case, the post-conviction court concluded that if counsel had raised these issues, any objections would have been overruled and as a result his claims were meritless.[20] Thus, the claim of ineffective assistance of counsel likewise does not provide a basis for relief.

Because the record fails to demonstrate that Rose's conviction was secured in any manner contrary to law as determined by the United States Supreme Court or that the state courts misapplied Supreme Court rulings, his petition here is subject to dismissal.

An appropriate Order will be entered.

---

[19] See: Exhibit 32 to the answer of the Commonwealth at p. 3.
[20] Id. at pp.6-8.

ORDER

AND NOW, this 25th day of March, for the reasons set forth in the foregoing Memorandum, the petition of Anthony Michael Rose for a writ of habeas corpus is DISMISSED, and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability is DENIED.

s/ Robert C. Mitchell<br>
United States Magistrate Judge